IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANGELA BENAVIDES<br>5555 Jackman Rd.<br>Toledo, Ohio 43613 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| WHITE TOWER RESTAURANT<br>1515 West Sylvania Avenue<br>Toledo, OH 43612 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| And | )<br>) | |
| WHITE TOWER, LLC<br>1605 Indian Wood Circle, Suite 200<br>Maumee, OH 43537 | )<br>)<br>)<br>) | |
| And | )<br>) | |
| BLUE LINE BUSINESS, LLC<br>1142 Corporate Drive, Suite D<br>Holland, Ohio 43528 | )<br>)<br>)<br>) | |
| And | )<br>) | |
| ALI MOH'D AHMAD MUSTAFA<br>4041 Commonwealth Avenue<br>Toledo, OH 43612 | )<br>)<br>) | |

Defendants.

Plaintiff, Angela Benavides, by and through undersigned counsel, as his Complaint against

the Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Benavides is a resident of the city of Toledo, county of Lucas, state of Ohio.

2. White Tower Restaurant ("White Tower") is a resident of the state of Ohio.

The Employee's Attorney.™ 

3. White Tower is a corporation for profit with its principal place of business located at 1515 West Sylvania Avenue, Toledo, OH 43612.

4. Mustafa was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at White Tower who acted directly or indirectly in the interest of White Tower.

5. Mustafa was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

6. All of the material events alleged in this Complaint occurred in Lucas County.

7. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1) and (4).

8. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

1. Benavides is a former employee of White Tower.

2. Benavides is female,

3. Mustafa is the owner of White Tower.

4. Mustafa is male.

5. Mustafa did not participate in the decision to hire Benavides.

6. Benavides began working at White Tower as a server in June 2018.

7. When Benavides began working at White Tower, Mustafa told her that if she needed extra income, she could work for him as a housekeeper at his personal residence.

8. Benavides took Mustafa's offer and agreed to clean his home.

9. Throughout her time cleaning his home, Benavides was subjected to Mustafa's increasingly sexual behavior.

10. Mustafa would touch Benavides and make aggressive sexual advances towards her while she was working in his home.

11. The aggressive sexual advances continued until Mustafa coerced Benavides into having sex with him under the condition that she needed to have sex with him in order to keep her job.

12. After Benavides was coerced into having sex to retain her job, she never returned to Mustafa's home for any reason.

13. After the incident in Mustafa's home, Benavides became aware that Mustafa had a reputation for being sexually aggressive with female employees.

14. Benavides learned that Mustafa frequently asked female employees to clean his home as a side job, but that he expected to have sex with the woman cleaning his home.

15. After the incident in Mustafa's home, Benavides tried to stay away from Mustafa as much as possible.

16. Mustafa used his position of power at White Tower to get Benavides alone with him.

17. Once he was able to get Benavides alone, he would make aggressive sexual advances towards her.

18. Mustafa would attempt to put his hands down Benavides's pants, he would grab her breasts, and asked her to perform oral sex on him and have intercourse with him.

19. Mustafa's advances were unwelcomed.

20. Mustafa's advances were unwarranted.

21. Mustafa's sexual advances were pervasive.

22. Benavides did not give Mustafa permission to touch her at all during her employment at White Tower.

23. Benavides did not give Mustafa permission to put his hands down her pants during her employment at White Tower.

24. Benavides did not give Mustafa permission to grab her breasts during her employment at White Tower.

25. Benavides told Mustafa that she would not have a relationship with him, and that she wanted to do her job and be left alone.

26. Following Benavides's request for Mustafa to end his sexually harassing behavior, Mustafa continued sexually harassing Benavides.

27. Once Benavides told Mustafa to stop his sexual advances, Mustafa again used his position of power against Benavides.

28. Mustafa began cutting Benavides's hours.

29. Mustafa withheld pay from Benavides.

30. After applying financial pressure to Benavides, he made additional sexual advances and asked Benavides to have sex with him again.

31. Benavides made a formal complaint about her missing wages and reduced hours.

32. In response to her complaint, Mustafa did not correct Benavides's pay issues.

33. Instead, Mustafa told Benavides that if she was having financial trouble, she could come to his home and "clean his house" again, implying that they have sex in order for her to receive her fair pay.

34. Benavides refused all of Mustafa's advances and attempts to coerce her into having sex with him.

35. Based on Mustafa's responses to her refusals to have sex, his response to her missing wages, and his response to her missing hours, Benavides was forced to leave White Tower and resigned on May 25, 2019.

36. Benavides never received the pay that was withheld from her.

37. Benavides was never compensated for all of the hours she worked, as indicated in her report of missing pay.

38. Benavides was not compensated for the overtime she worked through the end of her employment.

## COUNT I:  SEXUAL HARASSMENT

39. Benavides restates each and every paragraph of this Complaint as though it were fully restated herein.

40. Benavides was subjected to unwelcomed sexual harassment in the form of unwanted touching, sexual comments, inappropriate sexual gestures, and sexual advances.

41. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

42. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Benavides repeatedly complained of the sexual harassment and directed that it not continue to Mustafa.

43. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. § 4112.02(A).

44. Mustafa's sexual harassment of Benavides occurred while she was acting in the course and scope of her employment as a server.

45. Mustafa was aware of Benavides's complaints about his sexually aggressive behavior, and not only did he not rectify it, but it became worse after Benavides's complaint.

46. Benavides suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

47. As a direct and proximate result of Defendants' conduct, Benavides has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT II: QUID PRO QUO SEXUAL HARASSMENT

48. Benavides restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

49. As a female, Benavides is a member of a protected class under R.C. § 4112.02.

50. During her employment, Benavides was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors by her supervisor, Mustafa.

51. The harassment against Benavides was based on her gender.

52. Benavides's submission to the unwelcome sexual advances while working in Mustafa's home was an express or implied condition for receiving job benefits and/or continued employment at White Tower.

53. Benavides rejected Mustafa's acts of sexual harassment.

54. After Benavides's rejection of Mustafa's sexual advances, Mustafa applied financial pressure to Benavides to coerce her into submitting to his advances.

55. After Benavides's rejection of Mustafa's sexual advances, Mustafa cut Benavides's hours and withheld her pay.

56. Defendants knew or should have known about Mustafa's sexual advances towards Benavides.

57. Defendants failed to remedy Mustafa's misconduct or stop him from continued acts of sexual harassment against Benavides.

58. Benavides suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

59. As a direct and proximate result of Defendants' conduct, Benavides has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: GENDER DISCRIMINATION

60. Benavides restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

61. Benavides is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

62. Defendants treated Benavides differently than other similarly situated employees based on her gender.

63. Defendants discriminated against Benavides on the basis of her gender throughout her employment with the company.

64. Defendants terminated Benavides's employment without just cause.

65. Defendants terminated Benavides's employment based on her gender.

66. Defendants' discrimination against Benavides based on her gender violates R.C. § 4112.01 *et seq*.

67. Benavides suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

68. As a direct and proximate result of Defendants' conduct, Benavides suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: HOSTILE WORK ENVIRONMENT ON THE BASIS OF (INSERT) DISCRIMINATION

69. Benavides restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. During her employment with White Tower, Benavides was subjected to offensive and harassing conduct by Mustafa based on her gender.

71. Defendants knew or should have known of the harassing conduct against Benavides by Mustafa.

72. Defendants condoned, tolerated and ratified this harassing conduct.

73. This harassing conduct was severe and/or pervasive.

74. This harassing conduct was offensive to Benavides.

75. This harassing conduct interfered with Benavides's ability to perform her job duties.

76. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Benavides.

77. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Benavides.

78. Benavides suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

79. As a direct and proximate result of Defendants' conduct, Benavides has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT V: RETALIATORY DISCRIMINATION

80. Benavides restates each and every prior paragraph of this complaint, as if it were fully restated herein.

81. As a result of the Defendant's discriminatory conduct described above, Benavides complained about the sexual harassment and gender discrimination she was experiencing.

82. Subsequent to Benavides rejection of Mustafa's aggressive sexual advances, Mustafa withheld pay and cut Benavides's hours.

83. After withholding pay and cutting Benavides's hours, Mustafa tried to convince her to have sex with him, or "clean his house again" for extra income.

84. Defendant's actions were retaliatory in nature based on Benavides 's opposition to the unlawful discriminatory conduct.

85. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

86. Benavides suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

87. As a direct and proximate result of Defendant's retaliatory discrimination against of Benavides, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: VIOLATION OF THE OHIO WAGE ACT

88. Benavides restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek. *See* R.C. §§ 4111.01, et seq.

90. During all times material to this Complaint, Mustafa was a covered employer required to comply with the Ohio Wage Act's mandates.

91. During all times material to this Complaint, Benavides was a covered employee entitled to individual protection of Ohio Wage Act.

9

92. Defendant violated the Ohio Wage Act with respect to Plaintiff by, *inter alia*, failing to compensate Plaintiff for all hours worked, failing to pay Plaintiff the minimum wage, and failing to pay the Plaintiff overtime.

93. In violating the Ohio Wage Act, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio Wage Act provisions.

## DEMAND FOR RELIEF

WHEREFORE, Benavides demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Benavides to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Benavides for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Benavides claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*s/ Andrew Pappert, Esq.*
Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
            drew.pappert@spitzlawfirm.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Angela Benavides demands a trial by jury by the maximum number of jurors permitted.

*s/ Andrew Pappert, Esq.*
Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)

*Attorneys for Plaintiff*